IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2020 JUL 13 A 11: 01
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| GARY GRANDISON, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:20-cv-483 |
| v. | ) |
| | ) |
| ALABAMA STATE UNIVERSITY, | )   DEMAND FOR JURY TRIAL |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Gary Grandison (hereinafter Dr. "Grandison" or "Plaintiff") and hereby files this Complaint against Alabama State University (hereinafter "ASU" or "Defendant") and states as follows:

## JURISDICTION

1. This is an action for declaratory judgment, equitable relief and monetary damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.* (hereinafter "Title IX"), which prohibits and provides for relief from sex/gender discrimination in federally funded education programs, and pursuant to 28 U.S.C. §§ 1331, 1343(4), 1367.

2. Grandison brings this action within two years of the last discriminatory act by Defendant.

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because said claims are so related to the Plaintiff's claims under Title IX that they form part of the same case or controversy under Title III of the United States Constitution. Dr. Grandison brings this lawsuit within six years of the contract breaches alleged herein.

4. The unlawful practices alleged herein were committed by Defendant in Montgomery County in the state of Alabama. Thus, venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Gary Grandison, is an African American male citizen of the United States of America, was a resident of the state of Alabama when Defendant engaged in the wrongful acts complained of and is over the age of 19. At all times relevant to this action, Dr. Grandison was employed by Defendant.

6. Defendant is an institution of higher learning in Montgomery County, Alabama, receives public funding, and is subject to suit under Title IX.

## FACTS

7. Dr. Grandison is a highly skilled and competent golf coach. Dr. Grandison was hired by Alabama State University on or about January 1, 2003. He became ASU's women golf coach in 2007.

8. By contract executed on or about January 23, 2013, Dr. Grandison

2

earned a base salary of $31,915 as ASU's ladies' golf coach. Other contractual compensation to Plaintiff included $3,000 for winning the Southwestern Athletic Conference female golf championship, $5,000 for winning the national championship, $2,000 in each academic year that his athletes achieved a multi-year Academic Progress Rate (hereinafter "APR") of 950 or better, and a $600 monthly car allowance.

9. Plaintiff's base compensation was increased to $55,000 under the agreement executed between the parties on or about May 9, 2016, which was effective August 1, 2015 through June 30, 2018. Said contract also contained the following benefits and performance incentives for Plaintiff:

- $30,000, longevity bonus(es) -- $5,000 at the beginning of fiscal years 2016 and 2017, with the balance of $20,000 due at the end of the contract;
- $600.00, monthly car allowance;
- $6,000.00 in each season winning the SWAC golf championship;
- $10,000.00 in each season Plaintiff named Coach of the Year;
- $5,000.00 in each season his team advanced to NCAA National Championship;
- $10,000.00 in each season ASU qualified for the NCAA or HBCU golf championships;

- $15,000.00 for achieving academic awards in a respective school term/year.

10. By virtue of the May 2016 contract, ASU guaranteed Plaintiff-led golf team(s) an annual recruiting budget of $10,000.00, a travel budget of $75,000.00 per annum, and an annual material and service provision of $20,000.00.

11. Defendant failed to pay Plaintiff his longevity bonus for 2015 through 2018. In November 2016, Plaintiff agreed to modify the schedule for disbursement of the longevity bonus, but not the sum to be paid. Despite Plaintiff's accommodation, Defendant reneged on its commitment and failed to pay the longevity bonus.

12. Under Grandison, ASU's women golf program enjoyed unparalleled success and historic achievement, including ASU's first Southwestern Athletic Conference (hereinafter "SWAC") championships in school history. ASU's women golf team won the SWAC championship in 2010, 2013, 2014, 2015, 2016, 2018, and 2019.[1] Also, ASU claimed the Renee Power Cup at least four times under Dr. Grandison.[2] Moreover, Dr. Grandison coached and trained Channel Avaricio -- arguably the top female golfer in SWAC history with a tournament scoring average of 72 during her final two seasons. Avaricio is

---

[1] But for the disqualification of a golfer, which dropped the number of participants to four total golfers, ASU's women golfers would have claimed the SWAC championship in 2017. The ASU squad still finished with a 36-stroke advantage over the team with the second-best score.

[2] The Renee Power Cup is essentially the golf national championship for historically black colleges and universities.

currently a touring golf professional.

13. Dr. Grandison's lady golfers also scored well in the classroom. Dr. Grandison became eligible to receive bonus compensation based on the golfers' APR, which is a measure of athletes' academic performance and retention rate over a four-year period. The NCAA provided a special recognition to the women's golf team on two separate occasions based on exceptional APR results.

14. Despite the consistent and proven success of Plaintiff and the ladies' golf team, ASU reduced the ladies' golf coach's annual salary to $21,489 and removed performance incentives provided in previous contracts on or about October 2018, which was substantially lower than any coach of any men sport. This contract was provided after the golf season had begun and after the fiscal year started, which resulted in significant hardship and damage to Dr. Grandison. On information and belief, men sport coaches were paid no less than $33,500 annually for their services as coach, although they did not have nearly the sustained success of Dr. Grandison and his lady golfers. Moreover, no coach of a men's sport suffered a pay cut in 2018.

15. In the 2018 contract, Dr. Grandison was also eligible to earn: $3,500 for winning the SWAC (conference) golf championship; $5,000 for being crowned Black College (HBCU) national champions; and $3,000 for exceeding the team's multi-year APR of 950.

currently a touring golf professional.

13. Dr. Grandison's lady golfers also scored well in the classroom. Dr. Grandison became eligible to receive bonus compensation based on the golfers' APR, which is a measure of athletes' academic performance and retention rate over a four-year period. The NCAA provided a special recognition to the women's golf team on two separate occasions based on exceptional APR results.

14. Despite the consistent and proven success of Plaintiff and the ladies' golf team, ASU reduced the ladies' golf coach's annual salary to $21,489 and removed performance incentives provided in previous contracts on or about October 2018, which was substantially lower than any coach of any men sport. This contract was provided after the golf season had begun and after the fiscal year started, which resulted in significant hardship and damage to Dr. Grandison. On information and belief, men sport coaches were paid no less than $33,500 annually for their services as coach, although they did not have nearly the sustained success of Dr. Grandison and his lady golfers. Moreover, no coach of a men's sport suffered a pay cut in 2018.

15. In the 2018 contract, Dr. Grandison was also eligible to earn: $3,500 for winning the SWAC (conference) golf championship; $5,000 for being crowned Black College (HBCU) national champions; and $3,000 for exceeding the team's multi-year APR of 950.

16. By agreement between the parties, Dr. Grandison was due to receive team travel reimbursement and additional reimbursements for monies he spent for the Spring Kickoff, BBCU Match-play, Bama Beach Bash, the Jackrabbit Invitational, and the Murray State golf competitions from January 2019 to April 2019.

17. In May 2016, Dr. Grandison and ASU entered a contract for the former to serve as ladies' golf coach through June 30, 2018. Pursuant to this agreement, ASU agreed to compensate Dr. Grandison annually in the amount of $55,000. Also, this contract was incentive-laden, with Dr. Grandison due a longevity bonus totaling $30,000 over the life of the contract -- $5,000 was due at the beginning of each fiscal year and $20,000 was due at the end of the contract term. ASU paid only $5,000 of its $30,000 longevity bonus obligation.

18. Without justification or good cause and despite Coach Grandison's proven success, ASU summarily and abruptly terminated Plaintiff's employment contract effective May 30, 2019.

## COUNT I—TITLE IX

19. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1-18 above as if set forth herein in full.

20. Despite its sustained success, and the women golf team was treated much less favorably than male sports programs, who accomplished demonstrably

6

much less. Defendant paid Dr. Grandison less as coach of the ASU women golf team than it did to less accomplished and less proven coaches of men sports teams. Moreover, despite Dr. Grandison's success as a female golf coach, his contract was not renewed for the 2019-20 academic term, while the contracts of coaches of poorer performing men sports were.

21. Plaintiff experienced humiliation as he witnessed less accomplished coaches of male athletic teams not be subject to salary reduction. Moreover, Dr. Grandison's female athletes received reduced services and were forced to fundraise to satisfy reasonable and necessary costs of activities and travel-related expenses that had been already been approved by ASU. Male athletic programs did not have to resort to personal fundraising to pay for school-approved activities.

22. Defendant relegated Dr. Grandison's female golfers to second class citizenry, as compared to male athletes. Dr. Grandison's immediate supervisor even disrespectfully questioned the women's golf practice schedule during spring break without questioning the men's golf practice schedule for the same period. The previous three women's golf seniors did not receive school-provided senior portraits despite multiple complaints to appropriate athletic department administrators. On the other hand, men golfers received school-provided senior portraits without request or reminder.

23. Defendant's practices set forth in this section were willful, deliberate, and

intentional and violated Title IX of the Education Amendments of 1972, as amended, as Defendant treated the women golf team less favorably than male sports teams in terms of compensation for its coach, benefits and other areas. As a result of ASU's discriminatory treatment of its ladies' golf program, Dr. Grandison was forced to take a job in Houston, Texas making significantly less money. Moreover, he has been separated from his wife, who is a professor at Tuskegee University, which has caused him much anxiety and expense, as Plaintiff maintains his home in Montgomery, Alabama, while commuting to and from Houston. Furthermore, ASU's wrongful termination of Plaintiff has resulted in loss of tenure toward his retirement and a loss group health and life insurance and other employment benefits.

24. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action, for compensatory damages for the stress and disruption this has caused him and his family, back pay, and injunctive and declaratory relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein, unless remedied by this Court.

## COUNT II— BREACH OF CONTRACT

25. Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 - 24 above as if set forth herein verbatim.

26.     Under contract effective August 1, 2015 to June 30, 2018, Plaintiff was due a $20,000 end-of-term longevity bonus and at least one $5,000 seasonal longevity bonus.

27.     However, Defendant reneged on each of the foregoing contractual obligations.

28.     In breach of its contract with Plaintiff (effective August 1, 2015 to August 30, 2018), Defendant failed to pay Plaintiff's: longevity bonuses totaling $25,000; Plaintiff's 2017 Coach of the Year bonus equaling $5,000; Plaintiff's 2018 Coach of the Year bonus of $5,000; and Plaintiff's Adidas gift card for the 2019 Southwestern Athletic Conference Championship and Coach of the Year of $1,250. Plaintiff is also due reimbursements totaling over $7,000 for ASU golf program-related expenses incurred between January 2019 to April 2019.

29.     Furthermore, Plaintiff has lost his retirement seniority, health insurance and life insurance, is incurring mounting transition and displacement expenses, and earning less income due to Defendant's breach of contract.

30.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, other than this action for compensation and position award consistent with Defendant's and Plaintiff's contracts in effect August 1, 2015 to June 30, 2018 and October 1, 2018 to July 1, 2019.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this honorable Court assumes jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies and practices, conditions, and customs of Alabama State University violated the rights of Plaintiff as secured by Title IX of the Education Amendments of 1972.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title IX of the Education Amendments of 1972 and breaching its contract with Plaintiff.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding him the position and compensation he would have had in the absence of its gender discrimination and breach of contract, compensatory damages, back pay, lost seniority, and lost benefits.

4. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

## **JURY DEMAND**

**Plaintiff demands a trial by struck jury on all issues so triable.**

THE UNDERSIGNED COUNSEL REQUESTS SERVICE TO DEFENDANT BE PERFECTED VIA CERTIFIED MAIL BY THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA.

Respectfully submitted, this 8th day of July, 2020.

/s/ Robert L. Beeman, II
Robert L. Beeman, II
Attorney for Plaintiff
Alabama Bar No. 1838-E63R

OF COUNSEL:
BEEMAN LAW FIRM
3720 4th Avenue South
Birmingham, AL 35222

205.422.9015 (P)
800.693.5150 (F)

/s/ Roderick T. Cooks
Roderick T. Cooks
Attorney for Plaintiff
Alabama Bar No. 5819-O78R

OF COUNSEL:
WINSTON COOKS, LLC
505 20th Street North
Birmingham, AL 35203

205.482.5174 (P)
205.278.5876 (F)

11

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing document has been arranged to be served on Alabama State University at the address below via certified mail by the Clerk of Court for the United States District Court for the Middle District of Alabama on the 8th day of July, 2020.

/s/ Robert L. Beeman, II

Robert L. Beeman, II
[ASB-1838-E63R]

Alabama State University
  c/o President
915 South Jackson Street
Montgomery, AL 36104